

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 2 3 2023
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

## Dayvid  Jimenez
### *Pro-se*
### Plaintiff

*1:23-CV-368 MAD/ TWD*

### *V.*

## Sheriff Patrick A. Russo
### And
## Under-Sheriff P.J. Higgitt, Jr.
### of
### *Rensselaer County Correctional Facility*
### Defendant

---

## NOTICE TO MOTION
### Pursuant
### To
### 42 U.S.C. §1983

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

## Dayvid  Jimenez
*Pro-se*
Plaintiff

*V.*

## Sheriff Patrick A. Russo
And
## Under-Sheriff P.J. Higgitt, Jr.
of
*Rensselaer County Correctional Facility*
Defendant

---

## AFFIDAVIT
## Pursuant
## To
## 42 U.S.C. §1983

## I. JURISDICTION & VENUE

1.      This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C Section 1331 and 1343 (a)(3). Plaintiff Jimenez seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.      The Northern District of New York is an appropriate venue under 28 U.S.C. section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3.      Plaintiff who is proceeding Pro-se. Have been a detainee in ICE custody since May 3rd, 2022 after the City of Cohoes Police Department unlawfully arrested him in pursuant to a Administrative Warrant issued by DHS/ICE.

4.      Plaintiff is now detained in BUFFALO FEDERAL DETENTION

FACILITY, located in BATAVIA, NEW YORK as a result of what initiated as a

assumed minor traffic infraction by a Police Officer from the City of Cohoes

Police Department that turned into a false arrest/false imprisonment.

*(see N.D.N.Y. Case No. 1:22-CV-00984-MAD-TWD Dayvid Jimenez v. City of Cohoes PD., et*

*al.,)*


5.      From May 3rd of 2022 through June 3rd of 2022. Plaintiff was held as a

prisoner by the defendants in Rensselear County Correctional Facility ("R.C.C.F").

Located in 4000 Main Street Troy, NY 12180 pursuant to an Department of

Homeland Security ("DHS") Administrative Warrant.


6.      Plaintiff  Jimenez, was at all times mentioned herein a prisoner at

Rensselear County Correctional Facility ("R.C.C.F") in custody of the Department

of Homeland Security.

### III. DEFENDANTS

7.      Plaintiff make this affidavit in support of this Civil Lawsuit Pursuant to 42

U.S.C 1983. That his *4th, 5th, 8th and 14th Amendments* of the United States

Constitutional Rights were violated under color by Defendants *Sheriff Patrick A.*

*Russo* and *Under-sheriff P.J. Higgitt, Jr* of Rensselear County Correctional

Facility. Plaintiff request compensation for their violation of the Criminal actions-

Provisions concerning-Due process of law and just compensation clauses, and

Bail-Punishment.


8.      The defendants are sued individually and in their official capacity. At all

times mentioned in this complaint the defendant acted under the color of state law.

The Defendants are responsible to maintain safe order and control of the 473 bed

correctional facility to include "all" functions related to the daily operations of the

county jail.


### IV. FACTS
### THE ARREST OF MAY 3RD, 2022


*"The plaintiff must establish that the deprivation alleged is' sufficiently serious', or 'harmful enough', to*
*reach constitutional dimensions". Ramano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)*

9.      May 3rd, 2022 in the morning hours. Plaintiff was pulled over by a Cohoes

City Police officer who reason to pull plaintiff over was that he believed that

plaintiff did not put his signal light until plaintiff reached a full-stop at the STOP sign. According to the police officer: *"Plaintiff was suppose to put his signal light 100 feet from the STOP sign."* **(Ex. "A" Ticket page 1 )**

10.    Plaintiff shared his information with the police officer and the officer asked: *"What were you doing and where were you coming from?* Plaintiff pointed to the mechanic shop across the street and said his girlfriend was just dropping off her car. He also, stated to the officer that he is new in the area and that he apologize if he had committed any infraction without any knowledge of it.

11.    After the officer made several trips back and forth to his cruiser, and had several conversation with his supervisor. Plaintiff was handcuffed and arrested for a DHS Administrative warrant, for which he had no knowledge of it's existence. **(Ex. "A" Ticket page 2 )**

12.    After Plaintiff was arrested by the Cohoes City Police. He was brought to the police department. Where two DHS officers appeared and took custody of his person.

13.    Later that day, Plaintiff was transported to R.C.C.F Located in 4000 Main Street Troy, NY 12180. Where he was processed as a criminal and became **Inmate# 44351**

## V. FALSE IMPRISONMENT

14.     In Rensselaer County Correctional Facility. Plaintiff was imprisoned like the rest of the other people who were there for actually committing crimes.

15.     *To establish a false arrest claim under § 1983, a plaintiff must show that the defendant intentionally confined him without <u>consent</u> and <u>without jurisdiction</u>. Escalera v. Lunn, 361, F.3d 737, 744 (2d Cir. 2004). Probable cause to arrest constitutes justification.id. Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested <u>has committed</u> or is <u>committing a crime</u>."*

16.     In New York Vehicle and Traffic Law § 155 states: *"A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof."*
**(Ex. "B" New York Vehicle & Traffic Law § 155 pages 1-2)**

17.     *"A traffic infraction is not deemed for any purpose a penal or criminal penalty or punishment" People ex rel. Joyce v Hogenson*, 117 N.Y.S.2d 260, 1952 N.Y. Misc. LEXIS 2015 (N.Y. Magis. Ct. 1952).

18.    According to various researches, Plaintiff detention was "unlawful" because (a) New York State law does not authorize state or local law enforcement officers to detain persons <u>solely for immigration purposes</u>, and (b) while the federal government may empower state and local officers to enforce immigration law, no such authorization existed at the time of his imprisonment.
**(Ex. "C" Immigration Matter Article page 2 Par. 6)**

19.    When we address this issue through the United States of America's Constitutional Rights. Defendants, violated plaintiff's 4th, Amendment because it clearly says: *"The right of the people to be secure in their persons, against unreasonable searches and seizures, but upon probable cause, supported by Oath or affirmation, and the persons or things to be seized." 5th Amendment* states that:" *No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury"*. And 14th Amendment also says: *"nor shall State deprive any person of life, liberty, or property without due process of law;"* neither *"deny to any person within it's jurisdiction the equal protection of the law."*

20.    Immigration detained Plaintiff on a 2018 conviction out of the State of Connecticut. That charge has been done and over with in 2020. Then, 2022. Defendants held Plaintiff for the same offense making him to be "*subject for the same offence to be twice put in jeopardy of life or limb*" as stated in our *5th Amendment*.

21.    In the holding of *People ex rel.Welikson* 202 A.D.3d 1437 (2022) Decide February 4th, 2022 (three months before plaintiff's false arrest) states that: "*Indeed the Second Department addressed this precise issue and concluded that 'New York state and local enforcement officers are not authorized by New York law to effectuate arrestes for civil law immigration violations'*" quoting People ex rel. Wells v. DeMarco, 168 A.D.3d 31,34 [2d Dept 2018]), and that it is unlawful to retain a prisoner, who would otherwise be released, pursuant to an ICE detainer. **(Ex. "D" case of *People ex rel.Welikson* 202 A.D.3d 1437 (2022) page 1-3)**

22.    Then, the holding of *People ex rel. Wells v. DeMarco,* 168 A.D.3d 31 *New York Statutory Law Does Not Authorize State and Local Law Enforcement Officers to Effectuate Arrests Pursuant to **ICE Administrative Detainers and Arrest Warrants**.*

*"Although administrative arrest warrants are constitutionally valid in the federal immigration law enforcement context, such warrants are civil and administrative, and not judicial, in nature." (see Abel v. United States, 362 U.S 217, 234, 236, 80 S.Ct. 683, 4 L.Ed.2d 668).*

23.    In R.C.C.F, Plaintiff was labeled as a prisoner and a criminal when he was instructed to wear R.C.C.F prisoner's uniform and given a prisoner number. He was treated as a prisoner and addressed accordingly as a prisoner[1] would be addressed. And yet, Plaintiff committed no crimes for such punishment. Which is a violation of the *8th Amendment* of the U.S. Constitution for which says: *"nor cruel and unusual punishments inflicted."*

24.    To allege a violation of the *Equal Protection Clause* based on selective prosecution, a plaintiff must show. *"(1) [that] the person, compare to other similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" Freedom Holdings, Inc, v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004)(quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir 1999))*

---

[1]*18 U.S.C. § 3626(h)*

the term**"prisoner"** means any person subject to incarceration, detention, or admission to any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program;[...]

### *Amendment 14 of the U.S*

*Text All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

25.    *"PERSONS"*[(2)] *used in the Constitutional Amendment, is broad enough to include any and every human being within the jurisdiction of the republic. A resident, alien born, is entitled to the same protection under the laws that a citizen is entitled to. He owes obedience to the laws of the country in which he is domiciled and as a consequence, he is entitled to the equal protection of those laws." (Wong Wing v. United States,* 163 U.S. 228 (1896) U.S Supreme Court*)*

26.    A citizen of the United States would not be deprived of life, liberty, or property, without due process of law. Plaintiff is a Lawful Permanent Resident who has all the same rights as a citizen of this country. He pays taxes, work, and do all the normal things that a normal citizen does on the daily basis. Even though he is a non citizen. Plaintiff owes obedience to the laws of this country. For that, he is entitled to the equal protection of those same laws.

---

[(2)]"These Provisions are universal in their application to all *"persons"* within the territorial jurisdiction, without regard to any differences of **race**, of **color**, or **nationality and the equal protection of the laws is a pledge of the protection of equal laws."***(Wong Wing v. United States, 163 U.S. 228 (1896) U.S Supreme Court)*

## VI. COURT DATE: The Traffic Ticket
## MAY 11TH, 2022

27.    While Plaintiff was held in Rensselear County Correctional Facility. About

a week or so after the false arrest, he had court where he believe it was the 11th of

May (because that is what it says on his ticket). For that court trip he was escorted

by the very same officer who falsely arrested him. Plaintiff immediately felt

confused, and scared...Why was this officer the one taking him to court?


28.    Plaintiff asked a correction officer if he can put his regular clothes on for

Court? He was told by a Correction Officer that he could not.


29.    Upon his arrival at the Courthouse/Police Department in Cohoes New York.

The police officer, parked on the other side of the street at the parking lot. The

police officer walked Plaintiff across Canvass Street exposing plaintiff to the

public. He was wearing R.C.C.F's outfit which was: Yellow/Orange sweater,

Green shirt over the sweater, green pants with the Jail's initials and bright orange

shoes (crocs). Also, the correction officer did not allowed for plaintiff to shave.

That day the traffic ticket handed over to him by DHS officers (instead of the

police officer) on May 3rd was dismissed...Then he returned to Rensselaer County

Correctional Facility instead of being released.

### VII. AUTHORITY

*"New York Statutory Law Does Not Authorize State and Local Law Enforcement Officers to Effectuate Arrests Pursuant to ICE Administrative Detainers and Arrest Warrants."*
*(People ex rel. Wells v. DeMarco, 168 A.D.3d 31)*

30.    Defendants kept Plaintiff detained for an administrative warrant issued by

Department of Homeland Security. According to the Criminal Procedure Law

There are three types of warrants which are used for the purpose of bringing an

individual before a court of this State for the prosecution of a criminal action

pending there:

        1) a "warrant of arrest" (CPL 120.10);

        2) a "superior court warrant of arrest"(CPL 210.10); and

        3) a "bench warrant" (CPL 530.70)

31.    Each of these warrants is issued in the context of a criminal, not civil,

action, and each of these warrants is issued by a court. The ICE warrant of arrest

does not fall within any of the definitions of warrants in the Criminal Procedure

Law. For that, defendants had no actual criminal reason to hold plaintiff for a civil

matter in his facility as a criminal. **(Ex. "E" DHS Administrative Warrant Page 1)**

## VIII. QUALIFIED IMMUNITY

32.    The doctrine of qualified immunity protects state actors from liability if their conduct *"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callhan*, 555 U.S.223, 231, 129 S.Ct. 808, 815 (2009). Even if the rights are clearly defined, *"qualified or good faith immunity might still be available as a bar to plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum*, 929, F.2d 922, 925 (2d Cir.1991). *"Qualified immunity balances two important interests---the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson*, 555 U.S. at 231, 129 S.Ct. at 815.

33.    The above citations clearly says: *"Qualified immunity protects 'state actors' from liability...."* A Sheriff and a Under-sheriff are not a federal agent, they are "state actors." Common sense says to not falsely imprison or detain a person who one knows that they have not committed a crime or is committing a crime (crime as defined as: **misdemeanor or a felony in the** Criminal Code/New York-Penal Law Part ONE General Provisions Title A General Purposes, Rules of Construction, and Definitions § 10.00). **(Ex. "F" Section 10.00 N.Y Penal law page 1-4)**

34.    The defendants may argue that any claims against them must be dismissed because they were not "personally" involved. Plaintiff will disagree.

35.    The person involvement of a § 1983 claim. *Wright v. Smith* 21 F.3d 496, 501 (2d Cir. 1994). "*A plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered.*" *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986). Here the defendant authorized or granted permission for Department of Homeland Security to detain plaintiff in "their" facility without having committed a crime. For that, the defendants are liable for plaintiff's constitutional rights violations. Defendants could have also intervened and said that they are not authorized to detain noncitizens without at least a judge's permission. And, that they do not have jurisdiction because in the holding of *People ex rel. Wells v. DeMarco,* 168 A.D.3d 31 ***"The Appellate Division concluded that his detention was unlawful because (a) New York law does not authorize state or local law enforcement officers to detain persons solely for immigration purposes,...".***

36.    One can believe or pretend that defendants have immunity, because they could have held plaintiff pursuant to a "warrantless arrest" for which is governed by CPL 140.10

37.    Warrantless arrests effectuated by a "police officer" are governed by CPL

140.10, which states in part:


   *1. Subject to the provisions of subdivision two, a police officer may arrest a*

   *person for:*


       *(a) Any "offense" when he or she has reasonable*
       *cause to believe that such person has committed*
       *such offense in his or her presence; and*


       *(b) A "crime" when he or she has reasonable*
       *cause to believe that such person has committed*
       *such crime, whether in his or her precense or otherwise.*


38.    Under CPL 1.20 Definition of Terms of general use in this chapter Section

(34) Subsection (b). *"Sheriff, under-Sheriff, and deputy sheriffs of Counties outside*

*of New York City where such department is certified in accordance with*

*paragraph (d) of subvision one of section 846-h of the executive law;..."*  In other

words Sheriff Patrick A. Russo And Under-Sheriff P.J.Higgitt, Jr are police

officers (**see CPL 1.20[34][b]).**

39.    In Section 10.00 Definition of Terms of General Use in This Chapter

Penal (PEN) CHAPTER 40, PART 1, TITLE A, ARTICLE 10

(Penal Law §10.00[1]).(*see* Penal Law § 10.00[6]).

> [1] An "***offense***" is defined as " conduct for which a
> sentence to a term of imprisonment or to a fine is
> provided by any law of this state or by any law, local
> law or ordinance of a political subdivision of this state
> or by any order, rule or regulation of any governmental
> instrumentality authorized by law to adopt the same."

> [6] A "***crime***" is a misdemeanor or a felony

Then there is

> [2] "***Traffic Infraction***" means any offense
> defined as "traffic infraction" by section
> one hundred fifty-five (§155)of the vehicle
> and traffic law.

40.    Which does not qualifies as an  "offense" neither a "crime" according to
CPL 140.10 and Section 10.00 of the New York Penal Law § (1),(2) and (6) **(Ex.
"F" page 1-4)**

41.    *" Since the administrative warrant issued by ICE was not issued **by a judge***

***or a court, (Exh "E" page 1)** the Sheriff lacked New York statutory authority to*

*effectuate an arrest pursuant to the ICE warrant." (People ex rel. Wells v.*

*DeMarco, 168 A.D.3d 31)*

42.    *"New York statutory do not authorize state and local law enforcement to effectuate warrantless arrests for civil immigration law violations. An Arrest without a warrant is permitted where an individual "<u>has committed or is believed to have committed an offense and who is at liberty within the state</u>" under certain circumstances prescribed by statute (CPL 140.05). County Sheriffs and their deputies are police officers (see CPL 1.20[34]), as are members of the state police, county police, and municipal police." (People ex rel. Wells v. DeMarco, 168 A.D.3d 31).*

43.    With the above mentioned, it's clear that the defendants did not have authority to deprive plaintiff of his liberty. Defendants violated constitutional *Amendments 4th, 5th, 8th, and 14th*:

      A) A unreasonable detention

      B) Arrest without probable cause

      C) Deprivation of liberty without due process of the law.

44.    Immigration violations, as considered in the matter subjudice, are not crimes but rather are civil matters (*see Arizona v. United States, 567 U.S. at 396, 132 S.Ct. 2492; People v. Cesar, 131 A.D.3d 223, 229, 14 N.Y.S.3d 100*). Removable aliens are subject to deportation, not a term of imprisonment or fine, so the provisions regarding Warrantless Arrests under the Criminal Procedure Law do not apply.

## IX.   DETENTION PURSUANT TO AN ICE DETAINER OR WARRANT CONSTITUTES AN ARREST

45.    "*New York state and federal law mirror each other regarding what constitutes an arrest (see Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 [a showing of official authority such that "a reasonable person would have believed he was not free to leave" indicates that an arrest has occurred under the Fourth Amendment of the United States Constitution (internal quotation marks omitted)]; People v. Yukl, 25 N.Y.2d 585, 589, 307 N.Y.S.2d 857, 256 N.E.2d 172 [a suspect is in custody when a reasonable person innocent of any crime would not have believed he or she was free to leave the presence of the police]). With respect to immigration detainers, the federal courts have held that a continued detention on that basis after an inmate is entitled to release constitutes*

a new arrest (see *Morales v. Chadbourne, 793 F.3d 208, 217 [1st Cir.][since an individual was "kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes--one that must be supported by a new probable cause justification"]; Moreno v. Napolitano, 213 F.Supp.3d 999, 1005 [N.D.Ill.][federal government conceded that detention of an individual pursuant to an ICE detainer constitutes an arrest]).*" (Cited From: *People ex rel. Wells v. DeMarco, 168 AD3d 31*).

46.    Then **Ex C Page 3 Paragraph 8** States: "*Notably, the Fourth Department further concluded that the issue was not likely to recur because NYDOCCS conceded during the appeal that 'it may not detain an individual solely to facilitate a transfer to federal immigration officials seeking to effectuate a final order of removal.' id. In light of this decision, then, it appears that NYDOCCS agrees that it may not detain noncitizens beyond the expiration of their criminal sentences solely for immigration purposes.*"

47.    Even after plaintiff's court hearing for his dismissed "*signal light*" traffic infraction. The defendant chose to continue to detain plaintiff in their facility. Plaintiff was actually placed in prison as a prisoner solely for immigration purposes.

## X. THE "FELLOW" OFFICER RULE

48.    *"Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of" an officer "in possession of information sufficient to constitute <u>probable cause for the arrest</u>" (People v. Ketcham, 93 N.Y.2d 416, 419, 690 N.Y.S.2d 874, 712 N.E.2d 1238 [internal quotation marks omitted]). Thus, even if it is assumed that an ICE officer has probable cause to arrest for an immigration violation, the fellow officer, in this case the Sheriff's officers, must still make a "lawful" arrest. If there is no authority to arrest for a civil matter, such arrest cannot be considered "lawful". (People ex rel. Wells v. DeMarco, 168 A.D.3d 31)*

49.    I guess *"[t]he existence of probable cause to arrest...' is a complete defense to an action for false arrest's [and imprisonment]...under state law or under § 1983." Jenkins, 478 F.3d at 84 (quoting Weyant, 101 F.3d at 852).*

# XI. LEGAL CLAIMS

50.    Defendants acted in violation of CPL 140.10, 120.10, 210.10, 530.70, and made this scenario a false imprisonment. Violated the Constitutional Amendments: ( 4th, 5th, 8th and 14th) In their individually and official capacity and while under color of the states law:

- *4th,* (Plaintiff's right to be secure against unreasonable searches and seizures, but upon probable cause, and persons or things to be seized),
- *5th,* (deprivation of life, liberty, or property without due process of law; )
- *8th,* (cruel and unusual punishments inflicted by putting the plaintiff in cells.)
- *14th,* (denying plaintiff the equal protection of the laws).

51.    the plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunction relief which plaintiff seeks.

***"Deprivation of a constitutional right, 'for even minimal periods of time, unquestionably constitutes irreparable injury"***
*Miranda v. Garland, 34 F. 4th 338, 354-356 (CA4 2022)*

52.    The defendants violated all these amendments (4th, 5th, 8th, and 14th) when they seizure plaintiff of his liberty without probable cause on a claimed ICE Administrative Warrant; deprived plaintiff of liberty without due process, no bail was offered and they did all of this in violation of the Equal Protection Clause.

53.    In addition, plaintiff's Human Rights were all violated by the defendants in their individually and official capacity and while under color of the states law. They violated procedural and substantive Due Process of law, Including public humiliation, intentionally inflicted emotional distress, depression, pain and suffering, damage to plaintiff's life and mental health, psychological irreparable harm, and loss of freedom.

## XII. MOOTNESS

54.    The U.S Supreme Court has held that, *"voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case." Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979).

55.    A violation of Plaintiff's rights may not be moot if it is "capable of repetition, but evading review." Also, because Plaintiff is asking for money damage, his sue can never be moot. He has the right to get money for the injures that he suffered in the past, as long as he sue within the period allowed by the statute of limitations.

56.    In addition, plaintiff will forever be inmate # 44351 in the State of New York when he had never deserved those numbers to begin with.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that this court enter judgment granting plaintiff:

A.     A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States;

B.     Granting Plaintiff compensatory damages in the amount of $600,000.00 USD jointly and severally or what the court finds proper for each day incarcerated in Rensselaer County Correctional Facility;

C.     Plaintiff also seek a jury trial on all issues triable be jury;

D.     Injunctive relief that defendant no longer detain noncitizens "solely" for DHS purposes.

E.     Any additional relief this Court deems just proper, and equitable.

*Statement Pursuant to 28 U.S.C. & 1746, I Declare, under the penalty of Perjury under the laws of the United States of America, that the foregoing is True and Correct.*

Date:        Batavia, New York
             03/16/2023

~~ARY PUBLIC, STATE OF NEW YORK~~
~~Registration No. 01EV~~ ~~06~~
~~Qualified in Genesee County~~
~~Commission Expires February 01, 202~~

Respectfully Submitted

~~Dayvid Jimenez~~
A#055-769-136
Buffalo Federal
Detention Facility
4250 Federal Drive
Batavia, NY 14020

*Exhibit "A"*

New York State - Department of Motor Vehicles
**UNIFORM TRAFFIC TICKET**

**6209FDP8X2**

To be completed by Police Officer
and given to Motorist

POLICE AGENCY
COHOES CITY PD

Local Police Code
NY0010200

Last Name(Defendant)
JIMENEZ

First Name
DAYVID

M I

Number and Street
87 N MOHAWK ST APT 1B

Apt. No.

Photo Lic Shown ◯

City
COHOES

State
NY

Zip Code
12047

Clothing, Color, Hair, Class

Client ID Number
988068105

Sex
M

Date Expires
06/04/2024

Lic. State / Date of Birth
CT

Ven. Type
1

Year
2003

Make
JEEP

Co.
GR

Plate Number
AZ74548

Reg. State
CT

Registration Expires
12/17/2023

## THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS

Time
9:33 AM

Date of Offense
05/03/2022

IN VIOLATION OF
NYS V AND T LAW

Section — Sub-Section
1163B

(F Inf) Misd Felony MPH

MPH Zon

Description of Violation
INSUFF/TURN SIG - LESS THAN 100'

US DOT#

CDL Veh Bus Haz

Loc. Code
0102

Place of Occurrence
BRESLIN AVE AT PAR-

Hwy. No.

C/T/V Name
COHOES, CITY OF - 0102

County
ALBANY

Hwy. Type
6

NCIC/ORI
00102

AFFIRMED UNDER PENALTY OF PERJURY

Date Affirmed
05/03/2022

Off Assig

Arrest Type
1 - PATROL

Badge/Shield
1544

Radar Officer's Signature

THIS MATTER IS SCHEDULED TO BE HANDLED ON THE APPEARANCE DATE BELOW

COHOES CITY COURT

Address
97 MOHAWK ST. RM #8

COHOES

State
NY

Zip
12047

◉ RETURN BY MAIL BEFORE OR IN PERSON ON.

◯ MUST APPEAR IN PERSON ON.

Date
05/11/2022

Time
9:00 AM

**A PLEA OF GUILTY TO THIS CHARGE IS EQUIVALENT TO A CONVICTION AFTER TRIAL. IF YOU ARE CONVICTED, NOT ONLY WILL YOU BE LIABLE TO A PENALTY, BUT IN ADDITION YOUR LICENSE TO DRIVE A MOTOR VEHICLE OR MOTORCYCLE, AND YOUR CERTIFICATE OF REGISTRATION, IF ANY, ARE SUBJECT TO SUSPENSION AND REVOCATION AS PRESCRIBED BY LAW.**

Conviction may subject you to a mandatory surcharge and/or Driver Responsibility Assessment as prescribed by law.

Your failure to respond may result in a warrant for your arrest or suspension of your driver's license and/or a default judgement against you.

### TO PLEAD BY MAIL
### (NOT TO BE USED FOR MISDEMEANORS OR FELONIES)

- If you are pleading "GUILTY" by mail, place an "X" through SECTION B then complete and sign SECTION A.
- If you are pleading "NOT GUILTY" by mail, place an "X" through SECTION A, then complete and sign SECTION B.
- Mail this form to the Court noted on this ticket by Registered, Certified, or First Class Mail, with Return Receipt Requested.
- DO NOT use this form for Misdemeanors or Felonies or for a third or subsequent speeding violation in an 18 month period, instead you must appear in the Court noted on this ticket in person.
- If the Court denies your plea, you will be notified by mail to appear in the Court noted on the front of this ticket.

### SECTION A - PLEA OF GUILTY

To the Court listed on the other side of this ticket

I, _____

residing at _____

have been charged with the violation as specified on the other side of this ticket. I acknowledge receipt of the warning printed in bold type on the other side of this ticket and I waive arraignment in open court and the aid of an Attorney. I plead GUILTY to the offense as charged and request that this charge be disposed of and a fine or penalty fixed by the court.

Additionally, I make the following statement of explanation (optional):

_____

_____

All statements are made under penalty of perjury.

Date: _____  Signed _____

### SECTION B - PLEA OF NOT GUILTY

The following notice applies to you if the officer did not issue you a supporting deposition with your ticket.

NOTICE: YOU ARE ENTITLED TO RECEIVE A SUPPORTING DEPOSITION FURTHER EXPLAINING THE CHARGES PROVIDED YOU REQUEST SUCH SUPPORTING DEPOSITION WITHIN THIRTY (30) DAYS FROM THE DATE YOU ARE DIRECTED TO RESPOND TO THE COURT NOTED ON *THE OTHER SIDE OF THIS APPEARANCE TICKET. DO YOU REQUEST A SUPPORTING DEPOSITION?*

Yes ☐  No ☐

SUPPORTING DEPOSITION PROVIDED WHEN THIS TICKET WAS ISSUED?

NO ◯    SPEEDING (Gen 101) ◯

GENERAL (Gen 101A) ◉

Signature _____

Address _____

City _____  State _____  Zip Code _____

NOTE. Mail this NOT GUILTY Plea within 48 hours. The court will notify you by First Class Mail of your appearance date.

**APPLICANTS UNDER 18 YEARS OF AGE MUST SUBMIT NAME AND ADDRESS OF PARENT OR GUARDIAN BELOW.**

Name of Parent or Guardian _____

Address _____

City _____  State _____  Zip Code _____

FAILURE TO ANSWER THIS TICKET WILL RESULT IN THE SUSPENSION OF YOUR LICENSE AND A DEFAULT JUDGEMENT AGAINST YOU

UTD-17 (4/02)

**6209FDP8**

*Page 1*

**SUPPORTING DEPOSITION / CPL 710.30 NOTICE IN SUPPORT SIMPLIFIED TRAFFIC INFORMATION**

COUNTY OF   ALBANY

## LOCAL CRIMINAL COURT
## STATE OF NEW YORK
## THE PEOPLE OF THE STATE OF NEW YORK
## VS

DAYVID         JIMENEZ

CITY NUMBER    6209FDP8X2

Officer  J                    C    MURPHY                          of the  COHOES CITY PD

a Police Officer and the Complainant alleges that the Defendant committed a violation of

1. (Law/Section/Subsection)    1163B
2. Description of Violation    INSUFF TURN SIG - LESS THAN 100'
3. Date  05/03/2022    Time   9:33 AM    C/T/V of   COHOES, CITY OF - 0102
4. Vehicle Year   2003         Make   JEEP                    Color  GR - GREEN
   License Plate No.    AZ74548      State   CT
5. General Direction of Travel by Defendant:      EAST
6. Highway (Type/Name)        6 - CITY            BRESLIN AVE AT PARK AVE
7. Charge based on Officer's    DIRECT OBSERVATION
8. Additional Information:

ON THE LISTED DATE AND TIME I OBSERVED THE LISTED VEHICLE TRAVELING EAST ON BRESLIN AVENUE AND NOTED THAT THE VEHICLES TURN SIGNAL DID NOT COME ON UNTIL IT WAS AT A COMPLETE STOP AT THE AFOREMENTIONED INTERSECTION. VEHICLE THEN MADE A LEFT TURN. DURING A TRAFFIC STOP I IDENTIFIED THE DRIVER AS THE LISTED DEFENDANT. ALSO DURING THE STOP IT WAS DETERMINED THAT THE DEFENDANT HAS AN EXPIRED CT DRIVERS LICENSE AND AN ACTIVE ADMINISTRATIVE WARRANT OUT OF THE DEPARTMENT OF HOMELAND SECURITY.

## TO THE ABOVE NAMED DEFENDANT:

EASE TAKE NOTICE THAT PURSUANT TO SECTION 710.30 OF THE CRIMINAL PROCEDURE LAW, THE PEOPLE END TO OFFER AT A TRIAL OF THE ABOVE ENTITLED ACTION EVIDENCE OF A STATEMENT MADE BY YOU

on             at                  at   BRESLIN AVE AT PARK AVE                      To

                         C    MURPHY                    a public servant,

IN WHICH YOU SUBSTANTIALLY STATED AS FOLLOWS:

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW OF THE STATE OF NEW YORK.

Affirmed Under Penalty of Perjury

05/03/2022

page 2

*Exhibit "B"*

# N.Y. Veh. & Traf. Law § 155

Current through 2022 NY Law Chapter 642

Section 155 - Traffic infraction

The violation of any provision of this chapter, except articles forty-seven and forty-eight, or of any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony. A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof. This definition shall be retroactive and shall apply to all acts and violations heretofore committed where such acts and violations would, if committed subsequent to the taking effect of this section, be included within the meaning of the term "traffic infraction" as herein defined. Except in those portions of Suffolk county for which a district court has been established, outside of cities having a population in excess of one million in which administrative tribunals have heretofore been established, courts and judicial officers heretofore having jurisdiction over such violations shall continue to do so and for such purpose such violations shall be deemed misdemeanors and all provisions of law relating to misdemeanors except as provided in section eighteen hundred five of this chapter and except as herein otherwise expressly provided shall apply except that no jury trial shall be allowed for traffic infractions. In those portions of Suffolk county for which a district court has been established and in cities having a population in excess of one million in which administrative tribunals have heretofore been established, the criminal courts of such cities or portions of Suffolk county in which a district court has been established shall have jurisdiction to hear and determine any complaint alleging a violation constituting a traffic infraction, except that administrative tribunals heretofore established in such cities or portions of Suffolk county in which a district court has been established shall have jurisdiction to hear and determine any charge of an offense which is a traffic infraction, except parking, standing or stopping. In cities having a population in excess of two hundred thousand in which administrative tribunals have heretofore been established, and any such administrative tribunal established by the city of Yonkers, the city of Peekskill, or the city of Syracuse, such tribunals

Page 1

shall have jurisdiction to hear and determine any charge of an offense which is a parking, standing or stopping violation. Any fine imposed by an administrative tribunal shall be a civil penalty. For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense.

*N.Y. Veh. and Traf. Law § 155*

Amended by New York Laws 2017, ch. 157,Sec. 1, eff. 4/21/2018.
Amended by New York Laws 2015, ch. 59,Sec. ZZ-1, eff. 7/1/2015.
Amended by New York Laws 2015, ch. 58,Sec. CC-1, eff. 7/1/2015.

*Exhibit "C"*

Page 20 **(B)**

- The defendant owed a duty to the claimant
- There was a breach of that duty;
- The claimant's injury was proximately caused by the breach; and
- The harm suffered was a reasonably foreseeable consequence of a state actor's acts or failures to act.

Applying the law to the facts, the Court made the following findings:

- DOCCS owed the claimant a duty not to close the gate while he was entering the cell.
- The officer responsible for opening and closing the gate could and should have seen the claimant was about to enter the cell and should not have started closing the gate.
- The officer's action was the proximate cause of the claimant's injuries.
- The injury could have been prevented if the officer had watched what was happening in front of the claimant's cell, which he had an obligation to do.
- While it is unlikely, it is still foreseeable that someone could be injured if they were standing "in the in a doorway as a large, mechanically operated iron gate was closing."

In addition to these findings against the State, the Court also found that the claimant had to take some responsibility for walking into his cell as the gate was closing. Even so, the Court found that the claimant's fear that he would get in trouble if he was not in his cell when the door closed **mitigated** (reduced) the claimant's responsibility.

Based on the above analysis, the Court found that the State was 80% liable for the claimant's injuries and the claimant was 20% liable. This means that when damages are determined, the State will be required to pay 80% of the damages.

Brian Dratch, of The Dratch Law Firm, PC, represented William Robinson in this Court of Claims action.

X

## Immigration Matters
### Nicholas Phillips

This month's column focuses on a recent decision from the New York State Appellate Division, Fourth Department, *People of the State of New York ex rel. Benjamin Wetikson, Esq., on behalf of Dawson Sharpe, v. S. Cronin, Superintendent Groveland Correctional Facility*, 2022 WL 336315 (4th Dep't Feb. 4, 2022). The decision considers whether the New York Department of Corrections and Community Supervision ("NYDOCCS") can detain incarcerated noncitizens at the conclusion of their prison sentence in order to transfer them to Department of Homeland Security ("DHS") custody for deportation. While the Fourth Department ultimately dismissed the case on mootness grounds, the decision contains a concession by NYDOCCS with potentially important consequences for noncitizens currently incarcerated in NYDOCCS custody.

To understand the decision, some context is required. Under the Immigration and Nationality Act ("INA"), the federal statute which governs immigration cases, DHS has the authority to detain noncitizens under certain circumstances. First, under 8 U.S.C. §1226(a), DHS has discretionary authority to detain any noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." A separate provision of the INA, 8 U.S.C. §1226(c), governs the mandatory detention of certain noncitizens convicted of criminal offenses. Under that provision, noncitizens with convictions enumerated by 8 U.S.C. §1226(c)(1) must be detained by DHS "when the [noncitizen] is released [from criminal custody.]"

This last provision raises a question: how exactly should DHS detain a noncitizen "when the [noncitizen] is released" from criminal custody? Under a straightforward interpretation of the INA, it seems that DHS officers would be required to wait until the conclusion of a noncitizen's period of criminal custody before taking that person into DHS custody. However, since noncitizens can be held in criminal custody anywhere in the United States, such an interpretation would raise significant logistical issues for DHS, which would be required to keep track of when and where noncitizens are being released from criminal custody, not to mention that it would also need to station DHS officers at the facility at the time of release.

o solve thi sproblem, DHS created something called an immigratio ndetainer," which is a request submitted to a tate or loc al facility asking that facility to detain the oncitizen beyond the expiration of criminal custody so nat DHS can place the noncitizen in immigration etention. Congress first authorized this practice in 1986, hen it ame nded the INA to allow DHS to issue detainers or noncitizens who have been "arrested by a Federal, tate, or loc al law enforcement official for a violation of ny law rel ating to controlled substances." 8 U.S.C. 1357(d). In 1997, DHS promulgated a federal egulation, 8 C.F.R. § 287.7, which contains no limitation or controlle d substance offenses, but instead allows DHS fficers to issue detainers for *any* noncitizen it wishes to ake into custody. That regulation provides that "[u]pon determination by [DHS] to issue a detainer . . . such gency shall maintain custody of the alien for a period not o exceed 48 hours, excluding Saturdays, Sundays, and olidays in order to permit assumption of custody by DHS]." 8 C.F.R. §287.7(d).

mmigration detainers were an obscure topic until March 008, when President George Bush enacted a program alled Secure Communities with the goal of increasing mmigration enforcement through data sharing between tate and local jails and the federal government. Under ecure Communities, DHS created a database called DENT, which matches a person's fingerprint information vith their immigration records and, if applicable, their riminal history. When a person is apprehended by state and ocal authorities and fingerprinted, that fingerprint would be ent to IDENT. If the fingerprint matched an IDENT ecord for a noncitizen which DHS wished to detain, DHS vould then issue a detainer to the state or local facility.

ns the Secure Communities program expanded under 'resident Barack Obama, DHS's use of detainers became ne subject of numerous lawsuits, which questioned vhether detainers violated the Fourth Amendment's rohibition against warrantless arrests. One such hallenge took place in New York State and resulted into decision by the Appellate Division, Second Department, ntitled *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31 2d Dep't 2018). In that case, an Indian national named usai Francis filed a habeas petition after he was held eyond the completion of his criminal sentence in the uffolk County Correctional Facility in Riverhead, New /ork, pursuant to an immigration detainer. The Appellate Division concluded that his detention was unlawful because (a) New York State law does not authorize state or local law enforcement officers to detain persons solely or immigration purposes, and (b) while the federal overnment may empower state and local officers to

enforce immigration law, no such authorization existed in the circumstances of Mr. Francis's case.

That brings us to the Fourth Department's decision in *People of the State of New York ex rel. Benjamin Welikson, Esq., on behalf of Dawson Sharpe*. In that case, petitioner Dawson Sharpe filed a habeas petition alleging that NYDOCCS was detaining him beyond the expiration of his criminal sentence solely so that DHS could take him into immigration custody. Before the habeas petition had been decided, Mr. Sharpe was taken into DHS custody, and so the Supreme Court dismissed the petition on mootness grounds. (Mootness is a legal principle which applies when a controversy which initially exists at the time the lawsuit was filed is no longer "live" due to a change in the law or in the status of the parties involved, or due to an act of one of the parties that dissolves the dispute. When a case is moot, a court is empowered to dismiss the lawsuit because there is no live controversy remaining to be adjudicated.)

Mr. Sharpe appealed to the Fourth Department, which affirmed. In its decision, the Fourth Department noted the mootness doctrine may not apply where the legal issue (1) is likely to recur, (2) is substantial and novel, and (3) will typically evade review in the courts. 2022 WL 336315 at *1. While the Fourth Department concluded that the legal issue will typically evade review, since noncitizens would likely be detained by DHS before a court could issue a ruling, it nonetheless found that the issue was not novel considering *People ex rel. Wells v. DeMarco*'s holding that New York State cannot detain persons for immigration purposes absent specific federal authorization. Notably, the Fourth Department further concluded that the issue was not likely to recur because NYDOCCS conceded during the appeal that "it may not detain an individual solely to facilitate a transfer to federal immigration officials seeking to effectuate a final order of removal." *Id.* In light of this decision, then, it appears that NYDOCCS agrees that it may not detain noncitizens beyond the expiration of their criminal sentences solely for immigration purposes.

# NOTICE

**Individuals incarcerated at Adirondack, Altona, Bare Hill, Clinton, Franklin, Gouverneur, Riverview and Upstate should now write to the Albany Office of PLS. The address of the Albany Office is on the back page of this issue of *Pro Se*.**

*Exhibit "D"*

# People ex rel. Welikson v. Cronin

Supreme Court of New York

Feb 4, 2022

2022 N.Y. Slip Op. 753 (N.Y. Sup. Ct. 2022)

Copy Citation

⬇ Download      🚩 Treatment

Red flags, copy-with-cite, case summaries, annotated
statutes and more.

Compare with Lexis ›

31 KAH 20-01014

02-04-2022

THE PEOPLE OF THE STATE OF NEW YORK EX REL. BENJAMIN
WELIKSON, ESQ., ON BEHALF OF DAWSON SHARPE, PETITIONER-
APPELLANT, v. S. CRONIN, SUPERINTENDENT GROVELAND
CORRECTIONAL FACILITY, AND ANTHONY ANNUCCI, ACTING
COMMISSIONER, NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION, RESPONDENTS-
RESPONDENTS.

PATRICIA PAZNER, NEW YORK CITY (BENJAMIN WELIKSON OF
COUNSEL)), FOR PETITIONER-APPELLANT. LETITIA JAMES,
ATTORNEY GENERAL, ALBANY (SARAH L. ROSENBLUTH OF
COUNSEL), FOR RESPONDENTS-RESPONDENTS.

PATRICIA PAZNER, NEW YORK CITY (BENJAMIN WELIKSON OF
COUNSEL)), FOR PETITIONER-APPELLANT.

Page 1

LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH L.
ROSENBLUTH OF COUNSEL), FOR RESPONDENTS-RESPONDENTS.

PRESENT: CENTRA, J.P., NEMOYER, CURRAN, AND BANNISTER, JJ.

Appeal from an amended judgment (denominated amended order) of the
Supreme Court, Livingston County (Thomas E. Moran, J.), entered June 23,
2020 in a habeas corpus proceeding. The amended judgment dismissed the
petition.

It is hereby ORDERED that the amended judgment so appealed from is
unanimously affirmed without costs.

Memorandum: Petitioner commenced this habeas corpus proceeding seeking
the immediate release of Dawson Sharpe from the custody of the New York
State Department of Corrections and Community Supervision (DOCCS) on
the ground, inter alia, that he was being unlawfully held beyond the date of his
conditional release upon a request from United States Immigration and
Customs Enforcement (ICE) officials. Before the return date of the writ,
Sharpe was released from DOCCS's custody to ICE's custody. Supreme Court
dismissed the petition as moot. Contrary to petitioner's contention, the court
did not improvidently exercise its discretion in declining to invoke the
exception to the mootness doctrine (*see Matter of Kirkland v Annucci*, 150
A.D.3d 736, 738 [2d Dept 2017], *lv denied* 29 N.Y.3d 918 [2017]). The
exception to the mootness doctrine applies where the issue to be decided "(1)
is likely to recur, either between the parties or other members of the public, (2)
is substantial and novel, and (3) will typically evade review in the courts"
(*Coleman v Daines*, 19 N.Y.3d 1087, 1090 [2012]; *see City of New York v
Maul*, 14 N.Y.3d 499, 507 [2010]; *Matter of Hearst Corp. v Clyne*, 50 N.Y.2d
707, 714-715 [1980]). While we agree with petitioner that the issue raised here
will typically evade review in the courts, the issue raised is not novel. Indeed,
the Second Department addressed this precise issue and concluded that "New
York state and local law enforcement officers are not authorized by New York
law to effectuate arrests for civil law immigration violations" (*People ex rel.
Wells v DeMarco*, 168 A.D.3d 31, 34 [2d Dept 2018]), and that it is unlawful
to retain a prisoner, who would otherwise be released, pursuant to an ICE
detainer (*see id.* at 53). In addition, the issue is not likely to recur given
respondents' concession on appeal that "DOCCS now acknowledges that"

under... [ *Wells* ], it may not detain an individual solely to facilitate a transfer to federal immigration officials seeking to effectuate a final order of removal.

*Exhibit "E"*

**U.S. DEPARTMENT OF HOMELAND SECURITY**          Warrant for Arrest of Alien

File No.   055 769 136

Date:   04/12/2022

To:   Any immigration officer authorized pursuant to sections 236 and 287 of the
Immigration and Nationality Act and part 287 of title 8, Code of Federal
Regulations, to serve warrants of arrest for immigration violations

I have determined that there is probable cause to believe that _____ JIMENEZ, DAYVID _____
is removable from the United States. This determination is based upon:

☑ the execution of a charging document to initiate removal proceedings against the subject;

☐ the pendency of ongoing removal proceedings against the subject;

☐ the failure to establish admissibility subsequent to deferred inspection;

☐ biometric confirmation of the subject's identity and a records check of federal
databases that affirmatively indicate, by themselves or in addition to other reliable
information, that the subject either lacks immigration status or notwithstanding such status
is removable under U.S. immigration law; and/or

☑ statements made voluntarily by the subject to an immigration officer and/or other
reliable evidence that affirmatively indicate the subject either lacks immigration status or
notwithstanding such status is removable under U.S. immigration law.

**YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the
Immigration and Nationality Act, the above-named alien.

_____
(Signature of Authorized Immigration Officer)

NOT A JUDGE →

E 7108  SALMON - SDDO
(Printed Name and Title of Authorized Immigration Officer)

---

**Certificate of Service**

I hereby certify that the Warrant for Arrest of Alien was served by me at ___ Albany NY ___
                                                                          (Location)

on ___ JIMENEZ, DAYVID ___   on ___ MAY 3, 2022 ___ , and the contents of this
        (Name of Alien)              (Date of Service)

notice were read to him or her in the ___ English ___ language.
                                          (Language)

_____          _____
Name and Signature of Officer                Name or Number of Interpreter (if applicable)

Form I-200 (Rev. 09/16)

*Exhibit "F"*

# SECTION 10.00

## Definitions of terms of general use in this chapter

Penal (PEN) CHAPTER 40, PART 1, TITLE A, ARTICLE 10

§ 10.00 Definitions of terms of general use in this chapter.

Except where different meanings are expressly specified in subsequent provisions of this chapter, the following terms have the following meanings:

1. "Offense" means conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same.

2. "Traffic infraction" means any offense defined as "traffic infraction" by section one hundred fifty-five of the vehicle and traffic law.

3. "Violation" means an offense, other than a "traffic infraction," for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed.

4. "Misdemeanor" means an offense, other than a "traffic infraction," for which a sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed.

5. "Felony" means an offense for which a sentence to a term of imprisonment in excess of one year may be imposed.

6. "Crime" means a misdemeanor or a felony.

7. "Person" means a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a

Page 1

8. "Possess" means to have physical possession or otherwise to exercise dominion or control over tangible property.

9. "Physical injury" means impairment of physical condition or substantial pain.

10. "Serious physical injury" means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

11. "Deadly physical force" means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

12. "Deadly weapon" means any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles.

13. "Dangerous instrument" means any instrument, article or substance, including a "vehicle" as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.

14. "Vehicle" means a "motor vehicle", "trailer" or "semi-trailer," as defined in the vehicle and traffic law, any snowmobile as defined in the parks and recreation law, any aircraft, or any vessel equipped for propulsion by mechanical means or by sail.

15. "Public servant" means (a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. The term public servant includes a person who has been elected or designated to become a public servant.

16. "Juror" means any person who is a member of any jury, including a grand jury, impaneled by any court in this state or by any public servant authorized by law to impanel a jury. The term juror also includes a person who has been drawn or summoned to attend as a

Page 2

17. "Benefit" means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.

18. "Juvenile offender" means (1) a person thirteen years old who is criminally responsible for acts constituting murder in the second degree as defined in subdivisions one and two of section 125.25 of this chapter or such conduct as a sexually motivated felony, where authorized pursuant to section 130.91 of the penal law; and

(2) a person fourteen or fifteen years old who is criminally responsible for acts constituting the crimes defined in subdivisions one and two of section 125.25 (murder in the second degree) and in subdivision three of such section provided that the underlying crime for the murder charge is one for which such person is criminally responsible; section 135.25 (kidnapping in the first degree); 150.20 (arson in the first degree); subdivisions one and two of section 120.10 (assault in the first degree); 125.20 (manslaughter in the first degree); subdivisions one and two of section 130.35 (rape in the first degree); subdivisions one and two of section 130.50 (criminal sexual act in the first degree); 130.70 (aggravated sexual abuse in the first degree); 140.30 (burglary in the first degree); subdivision one of section 140.25 (burglary in the second degree); 150.15 (arson in the second degree); 160.15 (robbery in the first degree); subdivision two of section 160.10 (robbery in the second degree) of this chapter; or section 265.03 of this chapter, where such machine gun or such firearm is possessed on school grounds, as that phrase is defined in subdivision fourteen of section 220.00 of this chapter; or defined in this chapter as an attempt to commit murder in the second degree or kidnapping in the first degree, or such conduct as a sexually motivated felony, where authorized pursuant to section 130.91 of the penal law.

19. For the purposes of section 260.30 and 120.01 of this chapter the term "child day care provider" shall be defined as provided for in section three hundred ninety of the social services law.

20. For purposes of sections 120.13, 120.18, 125.11, 125.21 and 125.22 of this chapter, the term "peace officer" means a peace officer as defined in subdivision one, two, three, four, six, twelve, thirteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-three, twenty-three-a, twenty-four, twenty-five, twenty-six, twenty-eight, twenty-nine, thirty, thirty-one, thirty-two, thirty-four,

Page 3

forty-eight, forty-nine, fifty-one, fifty-two, fifty-eight, sixty-one, as added by chapter two hundred fifty-seven of the laws of nineteen hundred ninety-two, sixty-one, as added by chapter three hundred twenty-one of the laws of nineteen hundred ninety-two, sixty-two, as added by chapter two hundred four of the laws of nineteen hundred ninety-three, sixty-two, as added by chapter six hundred eighty-seven of the laws of nineteen hundred ninety-three, sixty-three, as amended by chapter six hundred thirty-eight of the laws of two thousand three, sixty-four, sixty-five, sixty-eight, as added by chapter one hundred sixty-eight of the laws of two thousand, sixty-eight, as added by chapter three hundred eighty-one of the laws of two thousand, seventy, seventy-one, seventy-four, as added by chapter five hundred forty-eight of the laws of two thousand one, seventy-five, as added by chapter three hundred twenty-one of the laws of two thousand two, seventy-five, as added by chapter six hundred twenty-three of the laws of two thousand two, seventy-seven, as added by chapter three hundred sixty-seven of the laws of two thousand four, seventy-eight or seventy-nine, as added by chapter two hundred forty-one of the laws of two thousand four, of section 2.10 of the criminal procedure law, as well as any federal law enforcement officer defined in section 2.15 of the criminal procedure law.

21. "Drug trafficking felony" means any of the following offenses defined in article two hundred twenty of this chapter: violation of use of a child to commit a controlled substance offense as defined in section 220.28; criminal sale of a controlled substance in the fourth degree as defined in section 220.34; criminal sale of a controlled substance in the third degree as defined in section 220.39; criminal sale of a controlled substance in the second degree as defined in section 220.41; criminal sale of a controlled substance in the first degree as defined in section 220.43; criminal sale of a controlled substance in or near school grounds as defined in section 220.44; unlawful manufacture of methamphetamine in the second degree as defined in section 220.74; unlawful manufacture of methamphetamine in the first degree as defined in section 220.75; or operating as a major trafficker as defined in section 220.77.

Page 4